UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARIE ANGELINE NASTASE,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

Case No. 3:14-cv-05275-KLS

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of Defendant's denial of her applications for Disability Insurance and Supplemental Security Income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, Defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On December 3, 2010, Plaintiff filed an application for Disability Insurance Benefits and another one for Supplemental Security Income, alleging in both applications that she became disabled beginning October 1, 2010. *See* ECF #8, Administrative Record ("AR") 186-196. Both applications were denied upon initial administrative review on July 14, 2011 and on reconsideration on September 15, 2011. *See* AR 144-149. A hearing was held before an

administrative law judge ("ALJ") on September 19, 2012, at which Plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 10.

In a decision dated October 25, 2012, the ALJ determined Plaintiff to be not disabled. *See* AR 10-27. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 21, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1-3; 20 C.F.R. § 404.981, § 416.1481. On April 3, 2014, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* ECF #1. The administrative record was filed with the Court on June 13, 2014. *See* ECF #8. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues Defendant's decision to deny benefits should be reversed and remanded for an award of benefits, because the ALJ erred: (1) in finding that drug and/or alcohol abuse were material to the determination of disability, and (2) in rejecting the medical opinions of David Widlan, Ph.D. For the reasons set forth below, the Court agrees that the ALJ erred as alleged, and therefore in determining Plaintiff to be not disabled. However, for the reasons set forth below, the Court finds that while Defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991)

("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I. The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2dat 1119 n.10.

resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

A. Failure to Discuss Materiality of Drug and Alcohol Abuse in Context of State Agency Physician Reports

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* A claimant may not be found disabled if alcoholism or drug addiction ("DAA") would be "a contributing factor material to the Commissioner's determination" that the claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)). The Social Security Regulations also require the Commissioner to determine if "drug addiction or alcoholism is a contributing factor material to the determination of disability." *Id.* (citing 20 C.F.R. § 416.935(a)).

Plaintiff contends, and the Court agrees, that the ALJ ignored the uncontroverted medical opinions of the state agency physicians that drug and/or alcohol abuse was involved, but not material. In fact, Defendant concedes that the ALJ failed to discuss the State agency physicians' opinions regarding materiality, but argues that it is harmless error. *See* ECF #12 at 5.

The ALJ determined that drugs and/or alcohol are material in that substance abuse exacerbates the Plaintiff's mental impairments. *See* AR 17. The only medical evidence in the record to actually include a determination of materiality was the reports of the State agency physicians. No other report in the record indicated that drugs and/or alcohol abuse were material, or not. While the ALJ may pick and choose to which opinions she refers, she cannot create her own medical opinion. *See Gonzalez Perez v. Secretary of Health and Human Services*, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician); *McBrayer v. Secretary of Health and Human Services*, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion). The ALJ is free to merely choose "between properly submitted medical opinions." *Gober*, 574 F.2d at 777. Both reports of the State agency physicians found that "DAA is involved, but is NOT material." *See* AR 97, 110, 142. The ALJ gives "great weight" to the state agency physicians' reports "because they are generally consistent with the overall record." *See* AR 26. However, despite the great weight accorded to them, the ALJ does not discuss the state agency physicians' uncontroverted opinions that drugs and/or alcohol abuse are involved but not material.

Although Defendant argues that the ALJ's failure to discuss the State agency physicians' opinions regarding materiality is harmless error, the Court disagrees. The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Court noted multiple instances of the application of these principles. *Id*. (collecting cases). The Court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided

one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The Court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The Court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Defendant argues that the ALJ's error in not discussing the State agency physician's findings that drug and/or alcohol abuse were not material was harmless as "the ultimate conclusion would have been the same (i.e. Plaintiff is not disabled). The reason for this is that each of the reviewers noted by Plaintiff opined she was not disabled from any of her impairments, including her drug and alcohol impairments." *See* ECF #12 at 5. However, the ALJ found that the Plaintiff was disabled when using drugs and/or alcohol. *See* AR 17. Had the State agency physicians' opinions regarding materiality been given the same weight as the rest of their opinions, the disability determination may very well have changed. Thus the error was not harmless.

B. <u>Rejection of Dr. David Widlan's Medical Opinion</u>

Plaintiff further contends that the ALJ erred in rejecting the medical opinion of David Widlan, Ph.D. The ALJ gave little weight to Dr. Widlan's opinion, finding that "Dr. Widlan based his opinion, at least in part, on the claimant's subjective reports, and the claimant is not

fully credible." *See* AR 25. The ALJ also found his opinion to be "inconsistent with his examination findings." *Id.* Finally, the ALJ found that the overall record indicated "greater functioning, including evidence of controlled pain and psychotic symptoms on medication, regular participation in group exercise, and shopping at IKEA." *Id.*

According to the Ninth Circuit, "[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on claimant self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (*quoting Morgan v. Comm'r. Soc. Sec. Admin*., 169 F.3d 595, 602 (9th Cir. 1999) (*citing Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). This situation is distinguishable from one in which the doctor provides his own observations in support of his assessments and opinions. *See Ryan v.Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).

Dr. Widlan's report is from a consultative examination that he conducted on the Plaintiff. While it is true that his report is based in part on the Plaintiff's self-report, it also contains a discussion of his clinical observations of the Plaintiff at the time of the examination. Based on his examination of the Plaintiff, which included a mental status examination, Dr. Widlan's observations included the following:

> Marie's behavior was quite noteworthy…She appeared to have significant deficits in insight…She was tangential during the assessment and had trouble pinpointing information. A passive observer would not necessarily observe any mental health issues though once conversing with her it becomes obvious she is quite impaired. She became quite distracted during the Serial 3's task. She was unable to repeat any objects after a five-minute lapse.

> Marie struggled to articulate her mood…Her affect was restricted and generally congruent with her mood; however, on several occasions she laughed in a strange manner that was inconsistent with the information she was describing.
>
> Marie struggled to follow the clinical interview at times and presented as a questionable informant, not due to memory issues but due to the significance of psychosis. She was highly tangential though not incoherent.
>
> Marie struggled to identify specific time periods for life events. She was not able to remember any objects (out of three) after a five-minute lapse.
>
> Marie appeared to have significant deficits in insight regarding her emotional functioning as previously described, particular regarding paranoia.
>
> Marie struggled to complete serial counting tasks. On the Serial 3's counting task (counting backward from 100) she initially responded "7, 4." After this examiner prompted "County back from 100" she stated "97, 94, 93? No, wait, 97, 94, where was I? 97, 93, 90. Did I say that wrong?" After an additional prompt she stated "87."
>
> Marie exhibited significant concentration deficits that were evident during both the MSE and the clinical interview. She struggled to maintain focus at times and responded with slow pace. She clearly takes considerably longer than an average functioning individual to complete ADL's due to psychosis.

*See* AR429-431.

Dr. Widlan's conclusion states:

> While she is cognitively able to accept instruction from a supervisor for simple, repetitive tasks perhaps, she clearly has severe adaptive deficits secondary to psychosis and exacerbated by agoraphobia. These issues would impact all aspects of her functioning in an employment setting.

*See* AR 432.

While Dr. Widlan's opinion, like all psychological evaluations, is based in part on Plaintiff's subjective statements, it is clear that Dr. Widlan's opinion was based on other objective criteria including a mental status examination and clinical observations. Thus, this was not a legally sufficient reason to discredit Dr. Widlan's opinion.

The ALJ also found that Dr. Widlan's opinion is inconsistent with his examination findings. As evidence of this alleged inconsistency, the ALJ pointed to the fact that the Plaintiff could complete a three-step task, take trips out of her home, and complete several simple daily tasks. *See* AR 25. However, substantial evidence does not support the ALJ's findings regarding these activities. For example, while the record shows Plaintiff planned to participate in group exercise classes, there is no indication that she actually attended these class or that she did so on a regular basis. *See* AR 442, 445. Further, while shopping may show a high level of social functioning ability, the record shows Plaintiff went to IKEA on merely one occasion. *See* AR 674. These limited activities are not inconsistent with Dr. Widlan's opinion and are not a sufficient reason to discredit the opinion.

Further, in addition to his consultative examination, Dr. Widlan reviewed hospitalization records from St. Francis and records from Seattle Indian Health Board. *See* AR 427. Those records contain Plaintiff's history, based on self-report, in which it is noted that she is able to complete simple daily tasks and has taken trips outside her home. Dr. Widlan's own report contains references to Plaintiff's ability to complete simple daily tasks and take trips outside her home, including the one Plaintiff took to attend the consultative examination. Therefore, presumably Dr. Widlan was aware of these facts when making his conclusions, and did not find these limited activities to be inconsistent with his opinion.

As an examining physician, Dr. Widlan's report is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1)("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). Dr. Widlan based his report on his own observations at the time of the consultative examination, as well as his

review of other medical records and the Plaintiff's self-report. Dr. Widlan's report takes the alleged inconsistencies into account and does not discredit Plaintiff's complaints, supporting his ultimate opinion with his own observations. Therefore, the ALJ erred in rejecting Dr. Widlan's report.

II. This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain as to the materiality of drugs and/or alcohol abuse as well as the assessment of Dr. Widlan's medical opinion, remand for further consideration of those issues is warranted.

CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 30th day of October, 2014.

Karen L. Strombom
United States Magistrate Judge